CONLEY, Appellant,

v.

CORRECTIONAL RECEPTION CENTER, Appellee.

[Cite as *Conley v. Correctional Reception Ctr.* (2001), 141 Ohio App.3d 412.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 00CA039.

Decided March 5, 2001.

Timothy J. Conley, pro se, appellant.

Betty D. Montgomery, Attorney General, and Brian M. Zets, Assistant Attorney General, for appellee.

---

HARSHA, Judge.

Timothy J. Conley appeals the dismissal of his petition to the Pickaway County Court of Common Pleas requesting an order from the court compelling prison officials at the Correctional Reception Center ("CRC") to release identifying information regarding two of its corrections officers.

Appellant was an inmate at the CRC in Orient, Ohio, when he claims to have been battered on several occasions by correctional officers at the facility. He claims not to know the identity of his alleged assailants. He has since been transferred to the Southern Ohio Correctional Facility in Lucasville, Ohio, where he is currently incarcerated.

Appellant filed a petition in Pickaway County requesting a court order compelling CRC officials to release work schedules and photographs of the corrections officers who worked the second shift in the segregation unit on two specific dates. Appellant claimed a right to the information under the Ohio Public Records Act, R.C. 149.43. The trial court construed the petition as a writ of mandamus and granted appellee's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted. Appellant filed a timely notice of appeal raising two assignments of error:

"I. The trial-court made the ruling and entry based on the 'totality' of the information requested, when by law, the trial court should have 'Granted-in-part' and 'Denied-in-part' pursuant to Ohio Revised Code 149.43—The Ohio Records Act."

"II. When the trial court refused to enter a judgment and entry to relinquish copies of the names of the two (2) Correctional Officers in question, this constituted a clear violation of 'due process' of law protected by the Fifth Amendment of the Constitution of the United States."

In his first assignment of error, appellant asserts that the trial court erred by granting appellee's Civ.R. 12(B)(6) motion and dismissing his petition. In order for a court to dismiss a complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. York v. Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065, citing O'Brien v. Univ. Community Tenants

*Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224–225, 327 N.E.2d 753, 754–755. In construing a complaint upon a motion to dismiss for failure to state a claim, the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *York, supra.* In resolving a Civ.R. 12(B)(6) motion, a court is confined to the averments set forth in the complaint. See, *e.g., State ex rel. Alford v. Willoughby Civ. Serv. Comm.* (1979), 58 Ohio St.2d 221, 223, 12 O.O.3d 229, 230, 390 N.E.2d 782, 784–785. Appellate review of a ruling on such a motion presents a question of law, which we determine independently of the trial court's decision. *Nooks v. Edwards* (July 24, 1997), Ross App. No. 97CA2271, unreported, 1997 WL 426122.

The trial court properly construed the petition in this case as a petition for a writ of mandamus. A writ of mandamus is the appropriate remedy to enforce the public's right to gain access to public records under R.C. 149.43. *State ex rel. Plain Dealer Publishing Co. v. Lesak* (1984), 9 Ohio St.3d 1, 9 OBR 52, 457 N.E.2d 821; *State ex rel. Pub. Emp. Retirees v. Pub. Emp. Retirement Sys.* (1979), 60 Ohio St.2d 93, 14 O.O.3d 331, 397 N.E.2d 1191; and *State ex rel. Plain Dealer Publishing Co. v. Krouse* (1977), 51 Ohio St.2d 1, 5 O.O.3d 1, 364 N.E.2d 854. In order to be entitled to a writ of mandamus, the relator must show that (1) he has a clear legal right to the relief prayed for, (2) respondents are under a clear legal duty to perform the acts, and (3) petitioner has no plain and adequate remedy in the ordinary course of law. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 591 N.E.2d 1186, citing *State ex rel. Harris v. Rhodes* (1978), 54 Ohio St.2d 41, 8 O.O.3d 36, 374 N.E.2d 641.

Under the Ohio Public Records Act, the public has a legal right to inspect public records kept by a governmental body, unless they are exempt. R.C. 149.43. When documents are withheld from disclosure, the governmental body has the burden of proving that they are exempt. *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 682, 660 N.E.2d 1211, 1212–1213; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 206, 611 N.E.2d 838, 840–841. Courts are required to strictly construe exceptions in favor of disclosure. *Id.*

There is an exception under the Ohio Public Records Act for "confidential law enforcement investigatory records," which means "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following: * * * (d) Information that would endanger the life or physical safety of law enforcement personnel * * *." R.C. 149.43(A)(2).

■  The trial court relied on this exception in granting appellee's Civ.R. 12(B)(6) motion to dismiss. It found that providing an inmate with file photographs and work schedules of prison corrections officers would threaten the safety and well-being of those officers. The court stated that it applied a "good sense" rule in determining whether appellant was entitled to the information requested in his petition. After reviewing the pleadings, we are forced to conclude that the trial court improperly dismissed appellant's petition based on appellee's Civ.R. 12(B)(6) motion to dismiss.

■  Determination of the physical-safety exception requires a two-step analysis: (1) Is the record a confidential law enforcement record? and (2) Would release of the record create a high probability of disclosure of information that would endanger the life or physical safety of law enforcement personnel? See *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1997), 122 Ohio App.3d 696, 700, 702 N.E.2d 926, 928. The name and identity of law enforcement officers is not exempt from disclosure as a confidential law enforcement record unless there is some affirmative showing that disclosure would endanger the officer. Accord *State ex rel. Natl. Broadcasting Co., supra;* see, also, *Police & Fire Retirees of Ohio, Inc. v. Police & Firemen's Disability & Pension Fund* (1985), 18 Ohio St.3d 231, 18 OBR 289, 480 N.E.2d 482. We cannot agree that the pleadings establish as a matter of law that there is a *high probability* that disclosure of the requested records would endanger the life or physical safety of corrections officers at CRC. Granted, the appellant has a motive to attempt to physically harm his alleged assailants. However, we do not believe that this is enough to establish a high probability of danger as a matter of law, especially since appellant was transferred to a different correctional facility after the alleged incident and is no longer incarcerated at CRC.

We could hypothesize that appellant intends to use the names and photographs of the corrections officers to solicit others to harm the CRC corrections officers. However, it is merely speculation; there is nothing in the pleadings to indicate that disclosure of this information will jeopardize the safety of correctional officers at CRC. Moreover, the information contained in the records does not relate to specific law enforcement techniques, such as deployment tactics, which might endanger law enforcement officers if disclosed. See *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1997), 122 Ohio App.3d 696, 702 N.E.2d 926. Thus, we hold that the pleadings in this case do not show the high probability of danger needed to come within the physical-safety exception as a matter of law.

In his petition, appellant specifically requested photographs and work schedules of CRC corrections officers on duty in the "segregation unit" on two specific dates. The identity of those persons who were on duty when and where the appellant claims to have been attacked cannot legitimately be withheld on the

basis of the record before us. However, we emphasize that our analysis in this regard is limited to appellant's request for "historical" data. A different case would be presented if appellant's request involved future work schedules, or similar information that could be used to discern specific law enforcement tactics or techniques on a given day and location. Because appellant's request is limited to past information concerning two specific dates, we do not believe that the same potential for danger is involved. Having failed to meet its burden, appellee's Civ.R. 12(B)(6) motion to dismiss should have been denied.

Although not raised by appellee, we note that the Supreme Court of Ohio has held that certain personnel records of police officers are exempt from disclosure based on an officer's constitutional right to privacy. *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 707 N.E.2d 931, citing *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055 (holding that officers have a fundamental constitutional interest in preventing release of personal information contained in their personnel files where such disclosure creates a substantial risk of serious bodily harm). In *Keller*, the court held that the names of police officers' children, spouses, parents, as well as, home addresses, telephone numbers, beneficiaries, medical information, and other similar information were not available to a relator who might use the information to achieve nefarious ends. The court indicated that a "good sense" rule should be used when releasing law enforcement information.

The trial court appears to have relied on *Keller* in applying a "good sense" rule in this case. However, we do not believe that *Keller* is applicable. As we read *Keller*, the Supreme Court based its decision to deny access to the personnel records on the officers' constitutional right to privacy and their right to personal security and to bodily integrity. See, also, *Kallstrom, supra*. The information contained in the requested records in this case is not information of a personal nature, such as the names and addresses of an officers' family members as in *Keller*. Rather, the information relates to the officers' identity and *past* work schedules. Absent a showing of some substantial threat to personal security, disclosure of this information does not encroach on the officers' constitutional right to privacy. Therefore, we conclude that *Keller* does not provide a basis for granting appellee's Civ.R. 12(B)(6) motion to dismiss.

Appellant's second assignment of error contends that the trial court erred in not granting the writ of mandamus. There is no basis in law or fact for the trial court to have entered judgment in favor of the appellant at this stage of the proceedings. Appellant's second assignment of error is overruled.

We conclude that the trial court erred by granting appellee's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted. The judgment of the trial court is reversed and the cause is remanded, and the trial court is ordered to proceed with the adjudication of appellant's request for a

418

writ of mandamus. To the extent that appellee can produce evidence of potential danger to CRC corrections officers, it should be given the chance to do so by way of a motion for summary judgment or otherwise.[1]

*Judgment reversed*
*and cause remanded.*

KLINE and EVANS, JJ., concur.

---

1. If the trial court ultimately grants appellant's request, we suggest that the appellee would not be precluded from making reasonable alteration to the photographs released to ensure that they are not copied, such as marking them "do not copy," or by using any other reasonable photographic means to achieve this end.